Good morning, Your Honors. May it please the Court, Jeffrey Buchholz for Allergan. This case is resolved by the plain language of the first to file bar and the Supreme Court's holding in Hallstrom reaffirmed in McNeil and reaffirmed in this very context in Rigsby that where a statute is phrased as an action shall not be brought if specified circumstances apply and an action is brought contrary to that provision that it must be dismissed. And that's the way the first to file bar is written. It says no action, no person other than the government shall intervene or bring related action. And the Supreme Court laid down a general rule in Hallstrom that it reaffirmed in McNeil that where a statute is phrased in that manner and an action is brought contrary to the provision, it must be dismissed. And then just two years ago in Rigsby, the Supreme Court specifically cited this provision, the first to file bar, as an example of a provision unlike the seal requirement that is phrased in that conditional way and that does in the Supreme Court's words expressly require dismissal. So we think that those cases resolve this case. This case was filed . . . It's not a jurisdictional bar. I think we've held that, right? That's true. So it's in the nature of a defective complaint. I mean, there could have been a new complaint filed, a fresh action brought at the time that the third amendment complaint was filed, right? It could have been restarted. Right. And there wasn't anything pending at the time. Right, Your Honor. But as Your Honor's question suggested, there's a distinction between a new complaint in an action that was barred when filed versus a new action. Yes, Mr. Wood . . . First question is, was there a violation? And you argue that there was based upon the plain language. And then the next question is, was it jurisdictional or not? And if not, could it be cured? And the district judge held it could be cured, it was cured by the third amendment complaint, correct? Your Honor, this Court certainly has held that the first to file bar is not jurisdictional. I'm not here to re-argue that. I really don't think that matters. The D.C. Circuit also says it's non-jurisdictional. And yet in Shea, the D.C. Circuit, in what I think is a very persuasive opinion, explained why the non-jurisdictional status of the bar really doesn't matter. There are lots of opinions out there that persuade it to different people. Well, okay. I think the . . . The D.C. Circuit holds that it is jurisdictional, but came out . . . holds that it is not jurisdictional, but came out the other way. Which is why I think the jurisdictional issue is really a red herring. I think the cure for the filing of a new complaint in the barred action . . . and the bar. The bar is phrased not as the prosecution of an action. That's not what's barred. Not going to judgment in an action, not engaging in discovery or what have you. It's the bringing of the action. That's what Congress barred. Can you explain why that makes any sense at all? That is, assuming that, as I think you just said, the relator here could have, on the day after the first filed case was dismissed, dismissed his own case and filed a new one. That would have been fine. Because he did not do that, but instead filed an amended complaint in this case, that's not fine and there's mandatory dismissal. Is there any rational reason why that should be so? Well, first I would say, yes, there are a number of reasons. And second, Congress enacted the language that it enacted and the court needs to enforce that language. That was my question. Right. Please tell me the actual reasons. Yes. The reasons are, as I think every court to have considered this issue has recognized, the first to file a bar was part of a package of amendments in 1986 that was designed to achieve the golden mean, as some courts have put it, between incentivizing relators to the government, where the government needs their help, and not incentivizing relators to bring cases where the government doesn't need their help and not Excuse me, but every relator in the situation that Mr. Wood was in still has the incentive to keep filing lawsuits, multiple lawsuits, lawsuit after lawsuit after lawsuit, because as long as all the prior lawsuits are sealed, there is no disincentive to filing. There is indeed still the incentive to try to be the first, because you think you might be the first. Your Honor, I think We're wrong. It's true that a relator might not know whether there's a pending action that would bar his suit if it's under seal. That's not always true. Sometimes they're unsealed and the first to file a bar has an important role to play in that situation as well. But I think more fundamentally what Congress was getting at is the government should not have its recovery diminished by having to share with a relator where the government was already equipped to investigate the relator's allegations by virtue of a prior case making similar allegations. You know, if there was a 10, 15 year statute of limitations here, you wouldn't even be here. I mean, you're here, you're fighting because you want to keep, you want to have the statute of limitations started as late as possible and not have it go back to 2012 when the complaint was filed, 2010 when the complaint was filed, right? Well, I mean, that's the essence of what the benefit to your client is to basically have, if you're saying the third amendment complaint could have been filed as a fresh complaint in the new lawsuit, the statute probably would have begun at that time. I mean, that would have been the, it would have related, in other words, it would be the five years prior to the six years, whatever the figure, whatever it is. But now you, but, but, and that's what you're, that's what you're after. What we're after is, is asking this court to simply enforce the language that Congress enacted, both the language of the first to file bar and the statute of limitations. The value, the value, what you really benefit from in this whole case is not having the statute go back to the filing of the original complaint. Well, right, your honor. And Congress, among other goals that Congress was trying to achieve. If that's so, I mean, if, if, if it's an amended complaint, you'd have to deal with relating back. If it's a new complaint, you'd have to deal with equitable estoppel, right? Is there, is there really a difference in the end? Well, your honor, for a number of reasons, I don't think an amended complaint in this action, even if an amended complaint were somehow viewed as curing the improper bringing of the action in the first place, which I submit the court shouldn't conclude because that doesn't match up, the, the amended complaint still could not relate back to the initial complaint, both because of this court's decision in Baylor, but also more fundamentally about the first to file bar. The court should not be in the business of trying to render a nullity of the bar that Congress enacted and letting an amended complaint relate back to a complaint that was filed to an action that was filed in violation of Congress's provision is essentially rendering the first to file bar a nullity. It would hardly be a nullity. The first to file bar in a case where the first to file complaint stays alive would still preclude anyone else from filing. All those complaints would be dismissed. And conversely, uh, the first to file bar would not, uh, have any effect on a complaint that fortuitously was filed the day after a sealed complaint was, uh, uh, dismissed, right? But that's already been established, uh, in the Carter case in the Supreme Court. So it's, it's hardly a nullity with this rule and it doesn't necessarily make a lot of sense without it. I mean, I'm not, I'm not suggesting you're wrong. It's just a very, on the law, there's the very peculiar, uh, uh, set of situations. Well, I think your honor, one of the other reasons why the first to file bar does make sense applied the way that we think it should be applied is Congress could very reasonably have viewed the belated springing of stale claims as a problem. So that if the first to file bar required only staying as opposed to dismissing a case that was brought in violation of the bar, and then that case comes to life years later when the first to first filed case is dismissed, then you have a situation like you would have here of very old allegations that are on hold for a very long time, springing to life in the nature of this whole we term scheme, right? Because the complaint is sealed, the government investigates. So the complaint is sealed. The complaint is filed in 2010 and then it goes to the government and the government sits on it for eight years. Uh, but then they decide either to prosecute the case or to, uh, to release it to the relator. And under those circumstances, the case is, is then prosecuted. And, uh, the statute of limitations goes back to the filing of the original complaint. So, you know, it's, it's stale claims are part of this scheme. It seems to me. Well, it's one thing, your honor, for a claim to be litigated actively after a delay because of the government's investigation. That is how the cut, the statute is supposed to work. It's another thing for claims that were not supposed to have been brought in the first place and that were brought in violation of the first to file bar to come to life many years later and force the defendant to litigate many years later against claims that shouldn't have been brought in the first place and that can't be brought at that late date. You've got a question. May it please the court. Sarah Carol on behalf of the United States. We agree with Allergan that the plain language of the first to file bar requires dismissal without prejudice under circumstances like these. That's a longstanding position of the United States. Uh, in 2003 for example, uh, we filed an amicus brief in the Grindberg case and the 10th circuit in which we argued that the subsequent dismissal of a first filed action couldn't revive claims that were barred when filed. And as Mr. Buchholz mentioned, uh, in the Allergan case just about a year and a half ago, the Supreme court, uh, described the first to file bar as one expressly requiring dismissal where it was violated. And that was something that we had argued in that case. In, in the solicitor general's brief, he, he explained that, uh, the United States views the first to file bar as a provision, uh, that, uh, mandates dismissal where an action is brought in violation of it. What happens when the complaint is filed? The second, the new complaint is filed. It's without prejudice. And then a new complaint is filed. And don't you take, you take the position that the statute is told, is that, is that, is that what you're saying? We believe that, um, we believe that a new action would need to be filed. And we think that there could well be relators out there who would be entitled to equitable tolling of the statute of limitations in the event that their refiled suit was untimely. Equitable tolling of course is very different from relating back under rule 15. Yes, that's true. You have to actually show equitable tolling and others. There's a, uh, you know, there are strictures to that. Uh, it's not just because of the circumstances of the, of, of the delays that allow you to do it. Yes, that's right, your honor. And we, we do not think that one can simply file an amended complaint and have that complaint relate back in the same action because the amended complaint can't cure the fact that the action itself was brought in violation of the bar. But we do think that while a new action is required, there could be relators out there who would be able to show that they're entitled to equitable tolling. But like the DC circuit in Shea, we think that the best approach would be for this court simply to note that possibility, uh, but not to resolve it here. It seems to me that the government is partly at fault here because there was a three year delay between 2013 to 2016 as the government, uh, had before it, uh, the wood case and did nothing or it waited. Uh, and now, uh, now the time has gone by and you're taking this position. It's hard to see how the public, for me to see how the public interest is served here. Um, a couple of responses, your honor, how elegance interest is served. Right. Um, first I would note that I, to me it seems like the more relevant date is the date on which the earlier filed actions were dismissed, not the time after that when this action remained under seal because it was those earlier filed actions that posed the bar. I also think your honor that the government certainly has an interest in having time to investigate false claims act cases while they remain under seal. And I recognize of course that that can, can take some time. But, uh, I think that that's sort of just the statute operating as it's of time that the government can, can investigate. My understanding is that there is a period of time, a shorter period, a specified period of time for the government to investigate, but that it can be extended. That's right. Your honor. My, my recollection is that it's 60 days, but a district court can extend it for good cause. And I believe the district court here, uh, extended every 60 days period. I, I, I don't remember the details. The statute has an unrealistically short time for the government to investigate, which de facto turns into an indefinite period for the government to investigate that may go on so long, uh, that the relators action is, uh, is crimped to say the least. Well, I think you're right, your honor, that the investigations can often take longer than 60 days. But again, I think that the relevant question is when the earlier filed actions were dismissed. And we think that there are various, always take a lot longer than 60 days. That was my experience. Okay. Even accepting that to be true, your honor, our brief describes a few ways in which we think that concerns arising from, you know, a reading of the plain language of the statute could ameliorate the equitable tolling. Sure. So, uh, I take it the government's position is that equitable tolling, uh, as a legal matter, you see no obstacle to the existence of equitable tolling. Uh, but that, that would of course be a case by case determination. And you don't tell us anything about under what circumstances it would, you know, what kind of relators would and what kind of relators wouldn't. And you don't tell us anything about whether this relator would. And it seems to me it would be extremely difficult for this court to address equitable tolling in anything other than Dick utter dictum. Uh, and all you're saying is we might have a footnote saying government says maybe there's equitable tolling and that could be taken up later if Mr. Wood files a new complaint. And of course Allergan would not agree with the government that equitable tolling, uh, could apply and certainly wouldn't agree that it applies in this case. And then we're off to many more years of litigation, uh, over that subject. And that's the government's solution to this case. I think that's, you know, the most that we think it's appropriate to do in this case is to note the possibility, the possibility of equitable tolling. I think as Your Honor rightly points out that the, the, the tolling determination would be a very fact specific one that we think would be better made in the first instance in the refiled suit. And you're right that Almost have to be, I don't know how we could possibly speculate about that, uh, subject which hasn't been briefed by anybody and would be, uh, addressing a hypothetical future situation in which a hypothetical new complaint is filed. I think that's absolutely right, Your Honor. You know whether, um, the Fourth Circuit can, I, I, I, I understand that there's a petition for cert Yes. From the Fourth Circuit, is that correct? Yes, that's right, Your Honor. In the Carter case? Yes. Carter, is it Carter against Halliburton or Yes. Mm-hmm. And that was filed in January? Yes, that's right. Just recently, a few weeks ago? Mm-hmm. Mm-hmm. That's right. Thank you. Uh, thank you. We'll hear from the other side. There's one more. Thank you. Good morning, Judge Chin, and may it please the Court. Derek Ho for the appellee. We urge affirmance for two basic reasons. One, Rule 15 permits supplemental pleading and relation back in these circumstances, and two, the first-to-file provision does not expressly override that procedural rule. Congress legislates against the backdrop of the federal rules. What about the amended complaint cures anything at all about the first-to-file problem? The amended complaint, as Your Honor is alluding to, does not specifically refer to the dismissal of the earlier two complaints. If it did, what difference would that make? I think the argument of Allergan would still be exactly the same, would it not? Well, the arguments might be the same, but the effect of supplementing the pleading would be to cure the defect in the original complaint, as contemplated by Rule 15d. I'm trying to figure out how it cures something. The problem is that the action was filed while a prior related complaint— this argument, we're assuming that— it was filed while a—the action was filed while a related action was pending. So what about filing either the same or a different or a slightly amended complaint or a radically amended complaint in the same action cures the fact that the action was to have been dismissed at the time it was filed? Would have been, should have been, if only the district court in the case had known that there was another action pending. The bar was in place at the time the complaint was filed, but it was lifted by the time the third amended complaint was filed, and this is exactly the situation that the Supreme Court confronted in Matthews v. Diaz. Matthews v. Diaz, where there was a jurisdictional exhaustion requirement, the plaintiff filed prior to exhausting administrative remedies, then later exhausted those administrative remedies, and the Supreme Court said that that's an appropriate place for Rule 15d. Yes, of course the language of the first-to-file statute is much closer to the language in McNeil in that it is a prohibition on filing an action rather than just a condition precedent or something like that to filing an action. Does that make any difference? No, I don't think that distinction holds up because the notion that there's some difference between an action and a complaint is inconsistent with Matthews. Courts have jurisdiction over actions, not complaints, so the jurisdictional exhaustion requirement in Matthews meant that that whole action was barred. There was no jurisdiction over that action, and yet the Supreme Court said after the exhaustion requirement was subsequently met, the plaintiff could use Rule 15d, and just like in this case, in Matthews, the Supreme Court said the new complaint actually doesn't allude to the exhaustion. What happened was that the defendant stipulated to the fact that there had been exhaustion. Here, Judge Furman said the same thing is true. The defendant requested judicial notice of the fact that the earlier complaints had been dismissed, and notwithstanding the fact that the third amended complaint didn't allude to it, that was the functional equivalent of a supplement under Rule 15d. I'm just wondering why is an amended complaint even necessary? Isn't your theory really that the bar disappears once there is no longer a pending action? Well, to be candid, Judge Lynch, I think that that could be a way of resolving this case. That is to say, Jones against Bach, the case that I filed a 28J letter on, I think supports the argument that the first to file bar is really an affirmative defense, and therefore isn't something that the plaintiff needs to plead at all. It's something that the defendant can raise as an affirmative defense. It's clearly not something that the plaintiff could be required to plead because the plaintiff in many cases would have no idea. You say on information and belief we're the first to file, or we don't know whether anything has been filed, so we're assuming that we're the first to file. Right. It is somewhat unusual to treat it as something that the plaintiff has an affirmative duty to plead, but we don't feel like we need to fight against the proposition that an uncured situation would lead to the same result. We think that here there has been a cure, and at the very least under Rule 15D, now that Mr. Wood has cured it, he should be permitted to proceed. And could you address McNeil? How is McNeil consistent with that theory? McNeil is just the beginning of the Rule 15D analysis. In every Rule 15D case, there is a problem with the original complaint, and if that problem persists, then dismissal is warranted. But the question that arises is what happens when that bar is subsequently lifted? Do you still have to dismiss and then refile, or can you use supplementation? And that's where Rule 15 does its work. There would be no work for Rule 15D to do if the complaint weren't subject to dismissal in the first instance. So Halstrom and McNeil and Rigsby simply stand for the proposition that while the bar is in place, dismissal is appropriate, they don't supersede Rule 15D, which comes in to say that if the bar is then lifted, you don't have to dismiss and refile because that subjects the plaintiff to all the prejudice and the vagaries of having to dismiss and refile. That was the whole point. How do you respond to some of the policy concerns? Your position would reward a relator for violating the rule. It weakens the statute of limitations by letting claims be put on ice, in essence. How do you deal with those arguments? I think the fundamental response to that is that the first-to-file rule was enacted as part of the 1986 amendments to the False Claims Act, and the core purpose of those amendments was to enhance the government's ability to fight fraud, not to hinder them. And the way the first-to-file rule enhances the government's anti-fraud capabilities is to ensure that the first-filed relator's bounty is not diluted when subsequent relators try to horn in on its case. But once the first-filed relator abandons his claim, as was the case here, the bar is not . . . Relators would have incentive to violate the rule. Let's get it on file, and then we'll be in position if the first case goes away. I think that in the real world, as was the case here, many relators do not know that there is an earlier-filed case because those cases remain under seal. If they did know, then presumably so would the defendant and so would the court, and so the mandatory dismissal rule would take effect. So if someone intentionally violated the first-to-file rule by filing a second complaint, except perhaps in some rare case, or maybe it's not so rare, I don't know, where the second relator has some private channel to know that there was a prior-filed case, but nobody else knows except the government. Except in that kind of situation, the mandatory dismissal rule would handle. I think that's exactly right, Judge Lynch, and I think that's why Judge Furman was also right when he said the policy of preventing parasitic lawsuits is really achieved through the public disclosure bar primarily, not primarily through the first-to-file rule. The first-to-file rule is really designed to make sure that the first person in line remains first in line. But there must be more to it than that because it would be a very simple matter to say the first person to file gets the bounty and nobody who files later gets a bounty, right, without prohibiting them from filing the lawsuit. So there must be something more than just preserving the bounty undiluted for the first filer to actually prohibiting a second lawsuit. And I think the additional thing is that there is an interest on the part of the defendant, but that interest is a limited one and it's an interest in avoiding simultaneous lawsuits. But again, where the first relator abandons his claim, that policy consideration doesn't come into play. The later relator shouldn't be hindered in his ability to then pick up the mantle and litigate the case on behalf of the government. And I would add that the argument that the government can always intervene is not persuasive because the government doesn't want to intervene in a lot of cases, including because it doesn't have the resources to do so. Carter made clear that, again, one of the purposes of the 1986 amendments was to alleviate the fact that the government didn't have the resources to pursue these claims and needed to rely on private whistleblowers. And so the idea that the government can solve all these things by intervening, I think, is contrary, again, to the core purposes of the 1986 amendments. You know, just offhand, how many of these cases are the statistics for the relationship between the cases that the government actually takes and prosecutes itself as opposed to leaving it to the relators? The impression I got is that this is really a tool for the government to pursue these claims. Fortunately, they don't have to expend the resources, and it's a way of addressing a serious problem, and that the government benefits greatly from the statute and makes use of it. But I don't know, are there statistics on that? There are statistics, and I think I can't recite them in detail, but I think they confirm Your Honor's understanding of the benefits of this regime. There are many instances in which relators bring valuable information to the government. They pursue claims that yield significant recoveries for the government, and the ability of the relator to pursue that claim without government intervention alleviates the burden that the government would otherwise face. If the Court has no further questions, I thank you for its time. We'll hear the rebuttal. Thank you, Your Honors. Rule 15d is no answer to McNeill or Hallstrom or Rigsby. In Hallstrom and McNeill, in Hallstrom there had been a trial, so the problem with the bringing of the action in the first place in Hallstrom had been overtaken by events, and not only had that been overtaken by events, but there had been an actual trial. And the Supreme Court said, we regret having to throw this case out at this late date, but that's what the statute says. In McNeill, the condition that hadn't been satisfied at the time the action was brought was later satisfied. It would have been a very simple matter, if it were actually a solution, to supplement under 15d or for the Court to simply take notice of the fact that the condition had been satisfied. The Court obviously recognized that. That's clear from the opinion. But the Court says that the rule is, if the action is brought in violation of the statute, it has to be dismissed. And in Rigsby, same thing. The Supreme Court explicitly distinguishes between the seal requirement, which is not phrased in this kind of conditional manner, and the first-to-file bar and other provisions that are, and says that the remedy for a violation of those provisions, like the first-to-file bar, is expressly dismissal. I also — It's obviously not expressly. It doesn't say anything about it. The Court says that. The Court says that. And it says it in dictum vis-à-vis this case, isn't it? I mean, there's no — there was no indication in — first of all, in Rigsby, they were addressing a different — the issue in the case was about a different provision. That's true. And secondly, the — I think the — your adversaries acknowledge that dismissal is mandatory in the situation where the first case remains pending. So that — and it's not clear to me that the Court, the Supreme Court in Rigsby, in a case that is addressed to and primarily concerning a completely different provision, in saying that dismissal is mandatory in this different situation, or in the situation of the first-to-file rule, was paying any attention to thinking about, contemplating, imagining a case that falls somewhere in between the classic case, where it is still pending, and Carter, where a new case is filed after it's no longer pending. This is just a different situation, isn't it? Your Honor, I don't think it's — I don't think it's right that the Court was not aware of these issues. In Carter itself, just one year before Rigsby, the Supreme Court affirmed the dismissal of Carter in this exact situation, where the bar no longer applied to prevent the filing of a new action because the prior case had been dismissed. But the Supreme Court's disposition in Carter was to affirm, in part, the Fourth Circuit's dismissal without prejudice — not with prejudice, but affirmed the dismissal. So the Supreme Court knew that a year later when it was deciding Rigsby. And whether you want to characterize it as holding or not holding, it was an important part of the Court's reasoning in Rigsby to distinguish the seal provision from other provisions, specifically, the Court said, including first to file, that are phrased in this conditional manner. I also just want to make the point that the Court in — Your Honors have asked a number of questions about what's the policy behind all this? What purpose does this serve? And I want to give two answers to that, if I have a little bit of time to do so. The first is — Why don't you make those two points and then finish up? The first is what the Supreme Court said in McNeil. Justice Stevens says you could have asked the same question in McNeil, right? The conditioned precedent that hadn't been satisfied was later satisfied. What sense did it really make to throw out the plaintiff's lawsuit? But Justice Stevens, for the Court, says, although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of cases. The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command. The same thing is true here. As for the policy issues, Your Honor, Allergan — Your Honors, Allergan faced two QITAM complaints within the limitations period. The government investigated those complaints, decided not to intervene. It then faced a third QITAM complaint, this case, that the government took the time to investigate. The government actively investigated. And the government could have intervened, solved the first-to-file problem. The government decided not to. And there's no injustice in simply enforcing the regime that Congress enacted that requires dismissal of this case. The government could have intervened if it wanted to, but it didn't. And all we're left with now is — We have your arguments. Thank you. Thank you very much, Your Honors. We'll reserve the sitting. Thank you, Your Honors.